UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
FILED
MAR 28 2014
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

Civil Action No. 13-106-HRW

GGNSC VANCEBURG, LLC
d/b/a GOLDEN LIVING CENTER-VANCEBURG, *et al.*,                    PLAINTIFFS,

v.        **MEMORANDUM OPINION AND ORDER**

JULIA HANLEY,                                                      DEFENDANT.

This matter is before the Court upon Defendant's Motion to Dismiss [Docket No. 4] and Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 5]. The motions have been fully briefed by the parties [Docket Nos. 6, 7 and 8]. For the reasons set forth below, the Motion to Dismiss will be overruled and the Motion to Compel and Enjoin will be sustained.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Julia Hanley was admitted as a resident to the Golden Living Center - Vanceburg on May 7, 2009 and, save for intermittent terms of hospitalization, currently resides there [State Court Complaint, Docket No. 1-2, ¶ 2]. The facility is owned and operated by the Plaintiffs.

On the day she was admitted to the facility, Ms. Hanley signed the arbitration agreement by making her mark upon the document. The Resident and Facility Arbitration Agreement ("arbitration agreement") is attached to the Complaint as an Exhibit [Docket No. 1-1]. The arbitration agreement is a separate document, conspicuously titled **"RESIDENT AND FACILITY ARBITRATION AGREEMENT(NOT A CONDITION OF ADMISSION- READ CAREFULLY)."** Under the plain terms of the arbitration agreement, the parties agreed

that any disputes arising out of Julia Hanley's residency at Golden Living Center- Vanceburg must be submitted to binding arbitration. The agreement states, among other provisions, that the signatory "has the right to seek legal counsel concerning this Arbitration Agreement", that execution of the agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility, and that the signatory may revoke the agreement by providing written notice to the facility within thirty (30) days of signature. [*Id.*, p. 2]. No such notice was provided.

The arbitration agreement provides, in pertinent part:

> It is understood and agreed by the Facility and Resident that any and all claims disputes and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admissions Agreement or any services or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration
> . . .
> **THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

[*Id.,* emphasis in original]. Further, the title of the agreement contains a parenthetical that notes that it is **NOT A CONDITION OF ADMISSION – READ CAREFULLY** [*Id.*, emphasis in original].

On May 31, 2013, Ms. Hanley filed in the Circuit Court of Lewis County, Kentucky, Case No. 13-CI-00124, a negligence, medical negligence, corporate negligence and violation of long

term care resident's rights action, against GGNSC Vanceburg, LLC d/b/a Golden Living Center - Vanceburg; GGNSC Administrative Services, LLC d/b/a Golden Ventures; GGNSC Holdings, LLC d/b/a Golden Horizons; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC d/b/a Golden Living; Golden Gate Ancillary, LLC d/b/a Golden Innovations; GGNSC Clinical Services, LLC d/b/a Golden Clinical Services; GPH Vanceburg, LLC; Golden Living Center Administrator Judy Caudill; Golden Living Center Administrator Melissa Bentley; and Golden Living Center Administrator Joy Dingress. [State Court Complaint, Docket No. 1-2]

In their Answer, the Defendants asserted that Ms. Hanley's claims are subject to a binding arbitration agreement between the parties and requested that the matter be referred to binding arbitration and the Complaint be dismissed with prejudice.

Subsequently, the corporate defendants from the Lewis County Circuit Court Case filed the instant Complaint with this Court, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity. They seek a declaration that the arbitration agreement is valid and enforceable and an order compelled to honor the agreement and proceed to arbitration.

Defendant seeks dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs seek entry of an Order compelling Defendant to arbitrate the claims alleged in her state court complaint and enjoining her from pursuing her claims Lewis Circuit Court.

## II. STANDARD OF REVIEW

Defendant seeks dismissal of this case upon two theories: first that dismissal is warranted under Fed. R. Civ. P 12(b)(1) and, in the alternative, that dismissal is proper pursuant to Fed. R.

Civ. P 12(b)(6). The various Rule 12 motions to dismiss on the pleadings and the standards applicable to such motions are often confused with each other and bear repeating.

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This requires a consideration of and a ruling upon the merits of a claim. In determining whether dismissal is warranted under Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). If, in doing so, the Court determines that the case is legally insufficient, it will be dismissed.

The procedure under a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1) is quite different. At issue in a Rule 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case. In this context, the trial court may proceed as it never could under 12(b)(6) - no presumptive truthfulness attaches to either party's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the party claiming jurisdiction will have the burden of proof that jurisdiction does in fact exist. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cor. 1996)(internal citations omitted).

### III. ANALYSIS

Defendant makes three arguments in support of her dispositive motion: first, that this Court lacks subject matter jurisdiction; second, that this Court should abstain from exercising jurisdiction over this case ; and, third, that the arbitration agreement is invalid.

A. **Subject matter jurisdiction exists.**

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception.' " *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir.2010); 28 U.S.C. § § 1331, 1332.

Neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different States."

Defendant has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named plaintiffs in this action. Indeed Defendant has already pled in the appurtenant state court action that each of the named Plaintiffs in this action are citizens of another state. Neither has Defendant challenged that the amount in controversy fails to meet the jurisdictional requirements of 28 U.S.C. §1332. Rather, she contends that complete diversity of citizenship among the parties cannot be established because Melissa Bentley and Joy Dingress, the nursing home administrators named in her state complaint both Kentucky citizens who were not named as plaintiffs in this action, are an indispensable party under Fed. R. Civ. P. 19 and their joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).

Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule Provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether Ms. Bentley and Ms. Dingress are **indispensable** is to determine whether they are **necessary**. A party is deemed necessary under the Rule if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (I) as a practical matter, impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

Ms. Hanley's claims against Ms. Bentley, Ms. Dingress and the Plaintiffs in this case are

based on the same occurrence, to-wit, the alleged negligence that resulted in injury to her. Further, the arbitration agreement governs claims against the corporate parties as well as the administrators. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, Ms. Bentley and Ms. Dingress would face inconsistent procedural remedies. Accordingly, the Court concludes that the administrators are necessary party to the action.

However, that is not the end of the inquiry as it pertains to the existence of subject matter jurisdiction in this case. As the joinder of Ms. Bentley and Ms, Dingress would destroy diversity jurisdiction, the Court must determine whether they are **indispensable**. To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in their absence would be adequate; and (4) whether Golden Gate would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Ms. Hanley argues that she will not be afforded complete relief in the absence of Ms. Bentley and Ms. Dingress being made Plaintiffs in this action. She asserts that she will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case addressing

7

joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Hanley's] decision to file a suit naming [GGNSC and Ms. Bentley and Ms. Dingress] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that there is low risk that the state court will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id* at 203. Determining whether the dispute as it relates to GGNSC is subject to arbitration is a simple matter of contract interpretation and does not require Ms. Bentley's and Ms. Dingress' presence or input. *Id.* The prejudice Ms. Hanley emphasizes does not present the degree of prejudice necessary to support a conclusion that the administrators are an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, Ms. Hanley makes much of the administrators' status as joint tortfeasors. She implies that this is dispositive of the Rule 19(b) inquiry. The United States Supreme Court has explicitly rejected this theory as a *non sequitur*. *Temple v. Synthes Corp., LTD.*, 498 U.S. 5, 8 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them).

Finally, Ms. Hanley argues that an adequate remedy exists in state court if this Court were to dismiss the case. While that may be true, on balance, the factors do not dictate that the Court find Ms. Bentley and Ms. Dingress indispensable parties. As such, the failure to join them does not warrant dismissal.

Therefore, this Court finds the requirements of diversity jurisdiction have been met and this Court has proper subject matter jurisdiction over this case.

### B.  Abstention is not warranted.

Defendant contends that even if subject matter jurisdiction is established, this Court need not entertain this case but should, instead, abstain from doing so. This Court is not persuaded.

In a recent opinion, Judge Karl S. Forester of this district held that abstention was inappropriate in circumstances substantially similar to those presented here. *GGNSC Vanceburg v. Taulbee*, 2013 WL 4041174 (E.D.Ky.). *Taulbee*, like this case, arose from a case alleging negligence in care given at a nursing home. Lois Taulbee filed a civil action against GGNSC in state court. As in this case, GGNSC asserted that the state court claims are subject to the binding arbitration agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice. GGNSC then filed a complaint in this court, alleging federal jurisdiction by way of diversity. It argued that the arbitration agreement was valid and enforceable and asked this court to compel Taulbee to arbitrate her state claims and to enjoin her from further pursuing her claims in state court. Taulbee filed a motion to dismiss alleging, *inter alia*, abstention. *Id.* at *1-2. Judge Forester began his analysis with a general discussion of the abstention doctrine:

> Even where federal courts properly have jurisdiction over the matter, a district

9

> court may
> abstain from exercising its jurisdiction and refrain from hearing a case in limited
> circumstances. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th
> Cir. 2009). This exception is narrow because a district court presented with a case
> that arises under its original jurisdiction has a "virtually unflagging obligation" to
> exercise the jurisdiction conferred upon it by the coordinate branches of
> government and duly invoked by litigants. *Colorado River Water Conservation
> Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention is an "extraordinary
> and narrow exception to the duty of a district court to adjudicate a controversy
> properly before it." *Id.* at 813.

*Id.*, at *2.

He then described the analysis used to determine in what circumstances abstention would be appropriate:

> Under *Colorado River*, the threshold issue is whether there are parallel
> proceedings in state court. *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31
> (6th Cir. 1984). Once a court has determined there are parallel proceedings, the
> Supreme Court identified eight factors that a district court must consider when
> deciding whether to abstain from exercising its jurisdiction due to the concurrent
> jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th
> Cir. 2001). Those factors are: (1) whether the state court has assumed jurisdiction
> over any res or property; (2) whether the federal forum is less convenient to the
> parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction
> was obtained; (5) whether the source of governing law is state or federal; (6) the
> adequacy of the state court action to protect the federal plaintiff's rights; (7) the
> relative progress of state and federal proceedings; and (8) the presence or absence
> of concurrent jurisdiction. *Id.*

*Id.*.

Judge Forester determined that only the second and sixth factors favor abstention. *Id.* at * 3-5. All the other factors favor federal jurisdiction. He stated , " [n]either the fact that the state forum would be slightly more convenient to the parties, nor the existence of concurrent jurisdiction is an 'exceptional' circumstance necessary to compel this Court to

abandon the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817-18.". *Id.* at *5. He further pointed out: "It must also be kept in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction.' *Moses H. Cone*, 460 U.S. 1, 16 (1983)." *Id.* Accordingly, he held that *Colorado River* abstention was not warranted

Judge Forester's analysis is applicable here. The parties do not dispute that the action pending in Lewis Circuit Court is a parallel proceeding. As for the first factor, the state court has not assumed jurisdiction over any res or property. In *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir.1998), the Sixth Circuit wrote that where no property is at issue, the first factor is inapposite and supports exercising jurisdiction.

The next *Colorado River* factor is whether the federal forum is less convenient to the parties. This is a bit of a toss up. The undersigned has consulted MapQuest in this regard. Based upon that website, the distance from the Lewis Circuit Courthouse and the United States District Courthouse in Ashland, Ky is between 48.43 miles and 53.46 miles, depending on the route taken. For potential witnesses in the case, such as facility staff, doctors, and other residents in the Lewis County area, to travel that distance may pose a burden to them. However, the Golden Living facility at issue in this case is located in Lewis County. Relevant records and other forms of evidence are most likely located in Lewis County. Additionally, the alleged ADR Agreement and the alleged negligence arose in Lewis County. Giving the Defendant the benefit, the second *Colorado River* factor weighs in favor of abstention.

The third factor provides little support for declining to exercise federal jurisdiction. For the same reasons that the threat of piecemeal litigation does not make the nursing home

administrators an indispensable party, the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration. Courts give short shrift to the argument that avoidance of piecemeal litigation bears heavily on the question of whether to abstain from exercising jurisdiction. *PaineWebber*, 276 F.3d at 207.

The fourth factor is the order in which jurisdiction was obtained. This does not necessarily mean who won the race to the a courthouse. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,*, 460 U.S. at 21. A call to the Lewis Circuit Clerk revealed that the state court action has been a something of a standstill from the point at which GGNSC filed its Answer. Further, the instant action was filed just over a month after Ms. Hanley filed in state court. As Judge Forester noted in *Taulbee*, "[t]he passage of [a month] is too insignificant to justify the use of abstention, especially when both cases remain in the early pleading stage." *Taulbee* at *4. Thus, the fourth factor weighs against abstention.

As to the fifth factor, regarding the source of law, while it is true that state law will govern the standard contract defenses Ms. Hanley raises against the arbitration agreement, the Federal Arbitration Act governs the enforceability of arbitration agreements generally and applies here. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. Accordingly, this factor weighs in favor of federal court jurisdiction.

The sixth consideration is whether the state court will adequately protect GGNSC's interest. This factor weighs in favor of abstention. We have no reason to doubt the state court's ability to resolve the FAA arbitration issues presented here. The FAA extends Congress's

legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce. *Southland Corp v. Keating*, 465 U.S. 1, 16 (1984). Further, the Lewis Circuit Court has not ruled upon arbitration and there is nothing in the record which would lead this Court to believe the state court would be opposed to enforcing an arbitration agreement. *Cf. Greenview Hospital, Inc. v. Wooten*, 2010 WL 2835742 (W.D.Ky.)(finding that where a state court has ruled that it is without jurisdiction to compel arbitration, the state court is "particularly inadequate" to protect federal rights). Given the ability of the state court to protect GGNSC's rights, the sixth factor weighs in favor of abstention.

The seventh factor is the relative progress of the state and federal proceedings. Here, the limited progress in the state court weighs against abstention.

The final factor under Colorado River is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction, this fact only marginally favors abstention, if at all. As noted above, the governing law is the FAA, which "expresses a preference for federal litigation." The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208-9.

As in *Taulbee*, only the second and sixth factors favor abstention. All other factors favor federal jurisdiction. This Court can think of no compelling reason to ignore Judge Forester's conclusion and find in favor of abstention. Indeed, it would be error to do so.

C.  **The arbitration agreement is valid.**

Defendant makes three arguments in support of dismissal pursuant to Rule 12(b)(6), arguments which seek to attack the validity of the arbitration agreement. None of the arguments,

13

however, are well taken.

## I. The arbitration agreement is properly authenticated.

In urging dismissal, Defendant maintains that has not been properly authenticated. This assertion is, at best, confusing and, at worst, disingenuous. Defendant, who was herself present during the admissions process, has not alleged in any pleading or affidavit that the mark contained on the arbitration agreement is not representative of her signature. Nor was such allegation or affidavit presented in the Lewis Circuit Court case, despite the fact that Plaintiffs filed their response in that case and attaching the arbitration agreement as an exhibit. In other words, if Defendant questioned the authenticity of the document, why did she not protest in Lewis Circuit Court? Why did she tarry?

As for the mark itself, an "X", the arbitration agreement is not the only document upon which it appears. Ms. Hanley executed her other admissions paperwork with an "X." [Admission Documents, Docket No. 8-1]. In their reply memorandum, Plaintiffs attach the affidavit of Sara Lewis, Admissions Coordinator with Golden Living Center-Vanceburg, who avers that she was responsible for the admission of Ms. Hanley and that Ms. Hanley, and no one else, would have placed her mark on the admission paperwork, including the arbitration agreement. Defendant has not offered any evidence to rebut the affidavit of Ms. Lewis. Moreover, Defendant has not alleged that the signatures were forged, or that Defendant was coerced into signing the documents. In sum, Defendant has not provided any evidence by way of affidavit challenging the authenticity of the admissions documents, As such, her argument in this regard is without merit.

## ii. The arbitration is a contract involving interstate commerce.

Defendant contends that the arbitration agreement is unenforceable because it does not evidence a transaction involving commerce. The FAA requires enforcement, except upon grounds for revocation of any contract, of "a contract evidencing a transaction involving commerce" for settlement "by arbitration [of] a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. Again, Judge Forester's opinion in *Taulbee* is on point. He recognized that courts have looked to the acceptance of Medicare as evidence of interstate commerce. He cited *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67 (Tex.2005), which held that the nursing home's acceptance of Medicare was sufficient for the court to establish the arbitration agreement involved commerce. *Id.* at 69. He also noted that the District Court of New Mexico reached the same conclusion last year. *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F.Supp.2d 1172, 1184 (D.N.M.2012). Citing numerous similar cases, Judge Forester further started that the purchase of goods from out-of-state vendors by nursing homes was sufficient to prove the requirement of "involving commerce" was met. *Owens v. Coosa Valley Health Care, Inc.*, 890 S0.2d 983, 987–88 (Ala.2004). Golden Living's web site shows that it accepts Medicare. *www.goldenlivingcenters.co m/expert-thinking/paying-for-healthcare.aspx*. This is considerable evidence in support of the arbitration agreement affecting interstate commerce.

In addition, as in *Taulbee*, in the present case, the arbitration agreement itself states: "The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act." [Docket No. 1-1, pg.1].

15

Therefore, the Court finds that Defendant's argument that the transaction does not involve commerce without merit.

### iii. The arbitration agreements is not unconscionable or violative of public policy.

The Court now turns to the question of unconscionability, a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.App.2001). Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* (*citing Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky.App.1978)).

Whether a contract is substantively unconscionable (i.e., contains terms that are unreasonable or grossly unfair to one side or another) or procedurally unconscionable (referring to the process by which the contract is reached) is a fact-intensive inquiry. Here, the facts belie the existence of either brand of unconscionability.

The agreement in question contains the following features that support its conscionability: (1) it is a stand-alone agreement; (2) three pages printed in normal font; (3) bold face all capital letter provision noting the agreement is not a condition of admission to o the facility; (4) no limitation on type or amount of damage claims; (5) no limitation on causes of action; (6) no suspect forum selection; (7) no truncation of the otherwise applicable statute of limitations; (8) the terms are such that a person of ordinary experience and education is likely to understand; and

(9) other courts applying Kentucky law have found that arbitration agreements presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Taulbee, Abell v. Bardstown Medical Investors, Ltd.*, 2011 WL 2471210, *1–3 (W.D. Ky. June 20, 2011), *Beverly Enterprises, Inc. v. Ping*, 2010 WL 2867914, *6 (Ky.App. July 23, 2010) (reversed on other grounds by *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky.2012).

Further, that the arbitreation greement is a "boiler-plate, pre-printed" document does not render it unconscionable, *per se*. *See Conseco*, 47 S.W.3d at 342–43 (noting that an arbitration clause appearing single-spaced on the back of a pre-printed form did not render it procedurally unconscionable). Defendant has provided the Court no facts to suggest Plaintiffs' representatives failed to provide her an opportunity to ask questions and understand the terms of the agreement.

There is simply nothing to suggest that the arbitration agreement is one-sided, oppressive, unfairly surprising or the result of unfair bargaining.

Moreover, the arbitration agreement is not void against public policy. It is well established hat there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, —— U.S. ——,, 132 S.Ct. 23, 25 (2011). Recently, the United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown*, —— U.S. ——, 132 S.Ct. 1201, 1203–4 (2012). The high Court held: "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.*

Defendant's attempts to attack the validity of the arbitration agreement are contrary to established law and, thus, fall far short of requiring dismissal pursuant to Rule 12(b)(6).

D.  **This Court may enjoin Defendant from proceeding in state court.**

GGNSC asks this Court to enjoin Ms. Hanley from pursuing her claims against them in the state forum. This is always a delicate matter, but one which seems clear in this instance. The Sixth Circuit has found that a district court's injunction of state-court proceedings after compelling arbitration did not violate the Anti–Injunction Act. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir.2002). An injunction falls within the exception as " 'necessary ... to protect or effectuate [the district court's own] judgments.' " It concluded "[a]n injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue." *Id.*

Here, enjoining the state court proceeding does not offend the Anti–Injunction Act as a matter of law, because it effectuates the proper purposes of this Court's judgment. To be sure, it is doubtful that a state court would proceed where another court of proper jurisdiction has ruled on the validity of an arbitration agreement and waiver of civil court remedies. Nevertheless, GGNSC is entitled assurance. Therefore, Ms. Hanley is enjoined from pursuing the pending state court action against the named Plaintiffs herein in Lewis Circuit Court.

## IV. CONCLUSION

A valid and binding arbitration agreement was executed by Julia Hanley. The citizenship of the parties before this Court are diverse and the amount in controversy is sufficient to exercise jurisdiction under 28 U.S.C. §1332. Further, no valid contractual defenses exist to the enforcement of the arbitration agreement. This matter must be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's Motion to Dismiss [Docket No. 4] be **OVERRULED**;

2.  Plaintiff's Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 5]

      be **SUSTAINED**;

3. Defendant shall prosecute all of her claims arising out of her residency at Golden Living Center – Vanceburg in accordance with the terms of the Resident and Facility Arbitration Agreement;

4. Defendant is **ENJOINED** from proceeding further in the pending state court action or in a venue other than the arbitration; and

5. This matter is **STAYED** pending any further proceedings to enforce any award of the arbitrator.

This 28th day of March, 2014



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge